Good morning, Your Honors. May it please the Court, my name is Angela Malala-Hanson, and I represent the Appellant, Tony Miller. Mr. Miller, in March of 2015, was on what's called post-release community supervision. I would like to address first what the officers were aware of, because before we can even get into the Fourth Amendment waiver issue, we have to address whether or not the officers were specifically aware of the search condition that was issued in this case. I'd also like to address the Simone case. Mr. Miller, I'm not having trouble hearing you. Yes, Your Honor, I can speak louder as well. I wanted to address the waiver argument because this Court's precedent makes clear that the officers must be aware that there is a search condition and the scope of that search condition before the Fourth Amendment waiver argument with regard to the search condition can be considered. So you're suggesting that when they checked the status of a number of individuals prior to even going out and patrolling, that didn't make them aware of anything? It did not. And I can give you, Court, a citation for that. It does seem to be as if, in their use of checking the status based on the record, they confirmed, as I understood it, that Miller was on PRCS. That's all they confirmed, Your Honor. They did not confirm what the search condition was, what the scope of that condition was. I'd also just comment, if the Mr. Miller is on PRCS, what does that mean? Well, the statute, the specific search condition issued in this case, the signed one, is not in the record. What we have been relying on and what the government relied on and was their burden is the statute 3540. 3540, yes. Exactly. Which says the person and his or her residence and possessions shall be searched in the street at any time of the day or night, et cetera, et cetera, with or without a warrant. Right. And upon being released under PRCS, is the DMA required to sign this form 5050-CS? So this can't be signed? It's not in the record, Your Honor. Well, that doesn't mean… It's a domestic. There has been no evidence made by the government that he signed it. Is there a dispute that he signed it? Do you take a position that he did not sign it? We don't know, Your Honor. It's not in the record or we cannot answer that question. Therefore, are you not in dispute? Well, I do dispute what the officers knew about the search condition. This is not necessarily a suspicion of a search condition. It doesn't say with or without cause as the full search condition does. I wanted to draw the Court's attention to what the officers knew because these facts are important throughout the governmental brief. We've now talked about what they knew about that he was on PRCS, and we know what PRCS says. They also knew something about Miller themselves, did they not? They knew his background, yes. What does that mean? I don't believe that will factor into the reasonableness of the search, whether or not they knew who he was. The attorney's record of the question was? The attorney seems to argue that their knowledge of him and their knowledge of what he'd been involved with, with them personally, did factor in. I think that the argument was arguing that that justified them detaining him for the purpose of the search. Well, I understand, but nonetheless factored in. With respect to the reasonableness of the search, though, which officers knew about the search condition is critical. They did not know he was subject to a search condition, and they did not check to see what the search condition was or the scope of it. They knew he was on PRCS, and they knew the statute said that anybody on PRCS has the senatorial search waiver, right? However, Your Honor, United States v. Cesaris, this Court had said that it was not enough that the officers knew the defendant was on parole. They had to know the scope of the parole search. What is an S-7 search clause? Your Honor, S-7, according to FBI Agent Berg's declaration, is a search that allows without a warrant. Who you, excuse me, person, residence, vehicle, and any real or personal property is subject to search and seizure with or without a warrant. The officers were not aware of the S-7 search condition. I understand. I guess I'm trying to figure out, if I have an F-7 search clause, how that's much different than what we just talked about under PRCS condition. I would agree. It's similar, Your Honor. The parole condition, however, is not similar. The parole condition says, explicitly, with or without cause. The court has discovered that in Samson and Knight's, the Supreme Court advised that we must look to the plain terms of the search condition. If it's not clear, and if it's ambiguous, that we need to- Are you suggesting that even under parole, one could not search with or without cause? Because I understood that not to be the case. I understood that given a PRCS search condition and a parole, which is similar, as I understand it, to a parole, that I understood that you agreed with that. Well, you were suggesting it was more like probation. And so I have to determine whether it's parole or probation. But given that PRCS, then it was similar to what I just said in S-7 search clause. The parole condition is markedly different from the PRCS condition. The court can look at the government's addendum and compare the two conditions. The parole condition says, explicitly, with or without any cause. That is quite different from with or without a warrant. And that's why this court, when analyzing and weighing the balancing that must be done here, must look at the specific terms of the condition as per Knight's and Samson. Samson didn't go so far as to say that it's okay to search where there's a clear, where there's not a clear and unambiguous search condition. Here, at minimum, it is ambiguous as to whether or not he allowed searches with or without cause. Elvis, if he had signed the Form 1515, do you agree that he would have to send it to the search? No, because I believe that form doesn't authorize the search meeting to be specific. Oh, excuse me, Your Honor. I would agree that he signed a Fourth Amendment waiver. Yes. However, the scope of that waiver would be relevant to this court's balancing of the reasonableness of the Fourth Amendment. That's the second question I think he's going to get to. But the first question, then, if the government had shown that he had signed the form, that the form authorized the search without a warrant, day and night, then he would have had an ineffective waiver. Would you agree with that? It would have been a waiver that was not clear and unambiguously allowing for a with or without cause search. In this particular case, without a warrant, day or night. A warrant requires probable cause. And so the oral condition California courts have are carved in a specific condition that says with or without cause, which is quite different because some level of suspicion is still required for PRCS as opposed to parole. But if the officer has probable cause of search, then it's different, isn't it? You're exactly right. If there is probable cause of search in this case. Well, you know, Your Honor, it's a good point. The only evidence is with or without a warrant. He has to show with or without a warrant or probable cause. That's total logical. Reasonable suspicion, Your Honor, is what I'm arguing is required here. Because without saying without suspicion, Your Honor, I have to reserve my two minutes. Paula, would it be good for you to answer the question? Yes, Your Honor. This just asked you. Yes. It's good for you to answer those, even if you would need just a couple of minutes. I did just want to put on the record that I wanted to save that time. I apologize. But I do want to answer Your Honor's question. The with or without a warrant and probable cause are different from reasonable suspicion. Reasonable suspicion is a lower standard, and that is at a minimum what's required under the specific search condition at issue here. So you're saying the with or without a warrant, with or without probable cause, and with or without reasonable suspicion? Your Honor, every case, and it's Samson, Lara, Job, Cervantes, includes the with or without cause language. Our condition does not. There are certain conditions that California has carved out a different level of suspicion that's required for such a case. My worry is, and this is the question, people, this is Jones, it's very straight. It says, although monitored by county probation officers, a defendant on PCRS is not on probation. Your Honor. That defendant instead is on PCRS, which is similar to Joel. But, Joel, this is a state court case. I know. But the reason I looked at Joel's is because it's a California type case I'm looking at, and so I'm looking at what does the California court say about this? But under Davis, Your Honor, the question of the state precedent and who would be in the search is still a question of federal law, and under Samson. Even in part of federal law, it seems to me that if I'm looking at PCRS, PCRS is not a federal idea. PCRS is the state, is California's idea of a good time. And so I'm trying to figure out what does it mean? Most of these community supervision, Your Honor, is for low-level offenders. By the way, the problem is not what it's for. It is what is it similar to? Is it similar to parole, or is it similar to probation? California says it's similar to parole. However, the Supreme Court has said in Samson that we have to look at the plain terms of the condition. Well, I understand what they said in Samson, but they also said in Samson that parolees have fewer expectations of privacy than probationers because parole is more akin to imprisonment. Those parolees are entitled to less protection. So I've got to figure out, is this parole or is this probation? California tells me it's parole. However, it is more akin to probation than parole because there are I think that's not what California says. That's a good argument by you for your client, but you've got people being jolted, staring you right in the face. Your Honor, the main distinction between the parole and the PRCS condition is important here. Thank you very much. Good morning, Your Honors. May it please the Court, my name is Mary T. Chan and I represent the United States in this appeal. Cervantes should dispose of this appeal with respect to whether PRCS is closer to parole or probation. But we have the waiver. Excuse me? We have the written waiver. We do not have the written waiver in the record, Your Honor, because the district court and the district court trial attorneys didn't put it in there. However, I would suggest that The district court didn't put it in there. The trial attorneys did. It's just the trial attorneys. So But is he a burden to show that he has actually signed his waiver? No, I think here, this is just the statistics, Your Honors. This isn't a waiver issue. There's a notification requirement that any inmate released from state prison must be given the terms of the conditions of either PRCS or parole, which are basically dual tracks of supervision post-release from a state prison. That is different than sort of a waiver rationale, which was not accepted by SAMHSA. SAMHSA really said to the Supreme Court of the United States that when you are a parolee under California, by virtue of that status, you do not have the expectation of privacy because California has structured the conditions of parole so that you are subject to warrantless search. And it isn't something that is based upon sort of the probation status. California's courts, city courts, have maintained this sort of consent rationale. That's not something that the federal courts have really maintained. The fact that somebody has been apprised of conditions and has consented to them may weigh in as a factor as to whether that person has an expectation of privacy, but that's not dispositive. So in this case, the fact that Mr. Miller was on PRCS, was akin to parole, by statute, he is required to consent or not consent. He's required to be subject to warrantless searches. And if you look at California Penal Code 3067, that combines both of them. It says that before a state inmate is to be released on either PRCS or parole, it's all in the same statute. That person must be notified of a number of conditions, all the same conditions that apply to both parole and PRCS, including search that is both warrantless and without cause. So it's the same search condition that applies to both. Now, I should also note that my point about it, I should note that this is not something that she ever raised in the briefing. The only difference that she raised in the briefing was the difference between the wording about concessions and property under control. So to the extent that she's trying to make this argument now, I would suggest that it's waived and this Court should not intervene in it. But also, the argument is without merit because, as I said, 3067 of the California Penal Code disposes and says that both PRCS individuals and parolee are both subject to warrantless as a sufficient of searches. California law says, under the Supreme Court case, People v. Reyes, that if you are subject to a warrantless search condition, that is the same thing as a sufficient of search warrant, a search condition. So that argument, I think, that this Court should really decide, and it's focused on Cervantes,  A mandatory solution is that it is more key to parole, this Court said, because it both comes after a period of incarceration, and it's conditional liberty that may be revoked. Those are true for PRCS as well. Except that there are some differences, and those differences with respect to PRCS make this case a clear parole, as opposed to what in that case was a close call. That's because PRCS is really parole just by another name. And that's what the California March of Interests said in 2011 when it passed the Realignment Act. It said, essentially, that it wanted to shift some of the responsibility for post-release supervision to the counties, to county probation officers who were more on the ground, who were closer, so that supervision would be more effective and would be closer. The entire purpose of this was to improve safety, public safety outcomes among inmates that were released, and to improve their reintegration back into society. It's not to reduce the level of supervision. Mandatory supervision is really for low-level offenders who are allowed to be sentenced to county jail time and in choice split sentences where part of their county jail portion, part of their sentence, is served out on supervision, what's called mandatory supervision, under the supervision of a county probation officer. That is only for crimes that are sentenced pursuant to California Penal Code 1178. That is the low-level offender that we're talking about, mandatory supervision. People who are not allowed to be sentenced pursuant to California Penal Code 1178 are in a higher level of category. They must serve out their sentences in state prison. They might not be the worst of the worst, but their crimes are much more serious. So, for example, the two crimes, the most recent crimes that Mr. Miller committed, one was felony possession and one was a drug offense under Health and Safety Code 11370.1. Both of those are not eligible for mandatory supervision. They have to be served in state prison, but they're not parole offenses. They're deemed by definition not because they're not. Can I go back and address the question of what were the officers there at the time? Yes, absolutely. If you look at Excerpts of Record, page 90, that's the CLEPS report. The CLEPS report says that he's under the supervision of County Probation Officer Gomes. It says that he has served, thus subject to California terms, a seven-serge term. It says that its expiration is May 12, 2015. This is on the CLEPS report, which they ran. There's no dispute about that. If you look at the CRIMS report. Does that say that contrary to what counselors argued, they were aware of a seven-serge term? Yes, absolutely. I understand. I'm a little confused about the argument because if you look at the CRIMS report, the CRIMS report also says that he's on PRCS and he's subject to a four-way search condition. But that's different than the CLEPS report. Maybe it's a little bit varied, so there was some oversight, but it's absolutely here. And there's no dispute that 30 minutes before their encounter with Mr. Miller, they had run this report. They also knew that he had been convicted of felon and possession crime. In fact, Mr. Officer Walker had been involved in that arrest, so they knew that that was a PRCS crime. It's definitionally not going to be something that's subject somebody to probation or a lesser term. We're not arguing what PRCS really means. With this evidence, we're really arguing that not only was he on PCRS, PRCS, but he also had an S7 search clause, which they also knew, which would more than adequately cover Thompson's argument. Absolutely. S7, and I think S7 is predominant for the search condition in this case because it's a little bit more specific. It says that the person, the residence, vehicle, as well as property, and your school are all subject to search. I was looking at the Baltimore Police Department report in AR-42, and it says that due to the fact that Miller is on active probation, the defendant, who's on PRCS, doesn't know anything about parole. They say, no, he was on probation, and they thought he had a higher expectation of privacy. Well, so actually that is a distinction that our courts make. The mainstream case, it's not a distinction that the California courts make, but nevertheless, this is actually their police report. The crimes report says that it's S7, and also, I should note again, that the crime that they knew he had been convicted of is not a probation crime. It is a PRCS crime they knew he had been convicted of. So he was on active probation. He was on active probation. So there is a mix of ill-reluced terminology, Your Honor, and it's because the county probation officers are the ones who are doing all the supervising. So there, I think, admittedly, is what he said about Officer Walker and Officer Reyes. So I attention, again, to the record as to the knowledge of the S7 condition. I'm sorry? The knowledge of the S7 condition, it is on excerpts of record, page 90. If you look, it's past this dotted line on the top of the page, the preparation type of line, and under that it says California CA terms, colon, S7. And then it also says F1 and P6. And then a few lines below his address, it says the docket number, which relates to which is the felony position conviction. Again, on top of that paragraph, it says E1 County Probation, TPO. And later it says F7, F1, page 6. So, Your Honor, it's not just limited, however, just to the club sheets. They also knew, and if you look to the declarations of Officers Miller, officers Perea and Walker, they knew him. They had encountered him several times before. One had been involved with his arrest. Were they convicted of a firearm possession? They knew he had been convicted. Was he on probation? He was on parole? They knew that he was on PRCS, which is more akin to parole than to probation. That's what I think Judge Beyer raises was of some significance to me. And I don't know, and maybe you can help me, and I don't know. It is not only the probation officers who do probation, but it's the probation officers who do parole. In other words, probation officers do both. If you're on probation in Pocatello, we're a long ways from Boise, so where could we have probation? However, if one is released from the penitentiary and is on parole and comes back to Pocatello, he's still supervised by, you could call them probation officers or parole officers. So, I mean, it seemed to me that the Oakland Police Department, if at all, and the fact that there were probation officers, references to probation even on the CLETS system, only says that they're doing, that the probation and the coal officers are the same. They're doing the same thing. It's not necessarily that that makes a difference in finding whether they're on, whether they're really subject to a parole violation or whether they just have a probation control. That's absolutely right, Your Honor, and I think it's the same here. Yes, I mean, I feel like that, frankly, counsel tried to get us to focus closely on PRCS, but that was one thing I was going to ask her. It seems to me in reading this record, if that's the underlying significance, it makes no difference what they say in their police report or what is said on the CLETS system. Well, I think that the ultimate point is that the officers in this case and their declarations say this knew that the defendant was on PRCS. The fact that he was supervised by a probation officer is part of PRCS, and so he might have some loose terminology when they say he's on probation, but ultimately it's PRCS, which is more akin to parole than probation. In fact, it really is parole, just by another name. All right. We've taken the last question. Thank you very much. We'll give you a moment for a quick welcome. Thank you, Your Honors. Your Honor, right away I want to clear up two questions the court asked over my counsel. They did not know he was on S7. The record that the court released did not include CLETS. Your Honor, I'll explain that. The police report ER-42 is an excerpt of what they knew from CLETS. The document that my counsel referred to, which was run seven days later by Agent Berg, an FBI agent, is a 100-page record. That 100-page record, he did a different search. As you can tell, the court compares ER-42 to ER-90, the government site. What Agent Berg did was he ran what looked like a warrant check, which gave a broader information, including the information that was different on the ER-90 from what the officers were aware of. For example, on ER-90 it says he was on probation for a drug case. On ER-90 it says that the term expired on a certain date. In the police report at ER-42, it has an empty date for the discharge date, so the officers didn't even know if he was currently under PRCS. And if the court looks at Agent Berg's CLETS report at ER-106, you can see exactly what Officer Perea knew. And, Your Honor, this very important claims, which is the Alameda County database, it's a court database, they did not check it. And it is not accurate to say they did. Agent Officer Perea was false in his declaration. We know that because of Agent Berg's declaration verifying that only Walker's password was used to search one database, and that is CLETS. And we know what he learned from CLETS because it's in the police report at ER-42. Okay, that's good. There's your point. Thank you very much. Any other questions? Okay. All right. Thank you. Thank you.
judges: Bea, N.R. Smith, Robreno